*State v. Capture the Dream, LLC*, No. 593-9-16 Wncv (Teachout, J., Jan. 26, 2018).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 593-9-16 Wncv** |

**STATE OF VERMONT**
  **Plaintiff**

  **v.**

**CAPTURE THE DREAM, LLC,**
**ADAM GERHARD, and REGINA FRANZ**
  **Defendants**

### DECISION
### Cross-Motions for Summary Judgment

This is a consumer protection case[1] brought by the State against Defendants Capture the Dream, LLC (CTD), Adam Gerhard (CTD's only member), and Regina Franz (Mr. Gerhard's companion). CTD operated the Randall Drive-In, a small drive-in movie theater in Bethel, during its 2013 and 2014 seasons.[2] The State alleges that Defendants violated the CPA by making numerous misrepresentations (and otherwise acting unfairly) in the course of a Kickstarter campaign and related fundraising that raised money to acquire and install a digital projector at the Randall Drive-In. The State has filed a motion for summary judgment seeking to establish liability against all defendants. Defendants oppose the State's motion, and Ms. Franz seeks summary judgment on the issue of her liability.

Generally, the State asserts three CPA claims against Defendants: that in the course of trying to raise funds from the public to support the installation of digital projection equipment at the drive-in, (1) they made numerous false representations leading the public to wrongly believe that their donations would benefit the theater's transformation to digital as an enduring improvement rather than for a few months only; (2) they made numerous false representations wildly exaggerating the cost to install digital projection equipment to induce contributions; and (3) their misrepresentations violated their agreement with Kickstarter itself.

*Facts*

The basic facts of this case are largely undisputed. The inferences that may be reasonably drawn from those facts, as pertinent to the question of deception, are hotly contested. In this regard, the context in which specific representations or omissions occurred is of paramount importance.

---

[1] Consumer Protection Act (CPA), 9 V.S.A. §§ 2451–2482d.

[2] The Randall Drive-In is now known as the Bethel Drive-In. The court will refer to it exclusively as the Randall Drive-In for the sake of simplicity.

Adam Gerhard and Regina Franz are drive-in theater enthusiasts. CTD is the business entity through which Mr. Gerhard operates. He is the only member and sole actor on behalf of the LLC. Ms. Franz has no legal interest in CTD, does not manage it, and is not employed by it. For purposes of this decision, there is no meaningful distinction between CTD and Mr. Gerhard.

Mr. Gerhard contracted with Mr. Corse, the owner of the Randall, to operate the theater during the 2013 season. He used 35 mm projection equipment that season. The lease had an option to renew for the 2014 season. As the uncontradicted testimony of Mr. Gerhard's expert, Mr. Pregent, makes plain, around this time, the film industry was at the tail end of a transformation from 35 mm film to digital projection. Film studios were ending the distribution of 35 mm format film, forcing theaters to convert to digital. A theater that did not project digitally had fewer and fewer opportunities to show first-run movies. The ability to operate profitably depends greatly on the ability to show first-run movies. However, the conversion to digital projection was extremely expensive given the revenues and profits a theater such as the Randall could reasonably anticipate generating. By this time, many drive-in theaters had simply closed to avoid the unfavorable economics of converting to digital.

Mr. Gerhard was acutely aware of these issues and actively attempted to negotiate a plan with Mr. Corse that would allow the Randall to convert to digital, with Mr. Gerhard as its operator, in an economically feasible manner. Negotiations did not go well. Mr. Gerhard renewed the lease for the 2014 season without Mr. Corse having assented to any further extensions of the lease or any plan to convert to digital. The 2014 lease, unlike the 2013 lease, did not include an option to renew. The parties dispute when Mr. Gerhard reasonably should have known for certain that there was no possibility that Mr. Corse would permit him to continue the lease during the 2015 season and beyond, but that dispute is not material to this decision. At no time could Mr. Gerhard have had more than a speculative hope that he might remain the operator of the Randall during any season after 2014.

In those circumstances and without Mr. Corse's assent (or, apparently, awareness), Mr. Gerhard initiated efforts at raising money from the public to enable him to buy and install a digital projection system at the Randall. The principal fundraiser was a Kickstarter campaign that ran from April 11 to May 27, 2014. Shortly after the Kickstarter goal was reached, Mr. Corse made crystal clear (if any confusion had remained from prior communications) that the lease would not be renewed beyond the 2014 season.

Mr. Gerhard then signed the contract with the seller/lessor of the digital projection system, had it installed, and operated it for the last couple months of the 2014 season. He uninstalled it at the end of the 2014 season and retained possession of it thereafter. It was never again used for the benefit of the Randall, and Mr. Gerhard never operated the Randall again.

The Randall was operated by someone else during the 2015 season and showed movies in 35 mm format. Mr. Corse and the new operator converted the Randall to digital projection sometime thereafter.

2

The State claims that in the course of the events described above, Mr. Gerhard and Ms. Franz made numerous express representations to the public that were false and misleading. The alleged misrepresentations all relate to what the status of the Randall or the digital projection equipment would be after the system was installed (count 1), and what the reasonable expense of the digital equipment and its installation would be (count 2). In count 3, the State alleges that the misrepresentations violated Mr. Gerhard's agreement with Kickstarter.

*Analysis*

The CPA bars "deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). "To establish a 'deceptive act or practice' under the Act requires three elements: (1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product." *Carter v. Gugliuzzi*, 168 Vt. 48, 56 (1998).

*CPA claims against CTD and Mr. Gerhard*

<u>Count 1</u>: Status of Randall and digital equipment after proposed installation.

The State asserts one CPA violation based on the aggregation of relevant representations and omissions during the overall campaign. In addition, it also asserts that many individual, specific statements within the aggregation are individual CPA violations on their own.

To the extent that the State argues that individual particular statements made by Mr. Gerhard, considered in isolation, each were demonstrably false, and misleading under the CPA due to their falsity, the evidence does not show a sufficient basis for such statements to be considered false. The State's position depends on inferences to be drawn from the statements. The many representations that the State argues were false were part of a social media fundraising campaign that was forward looking and rooted in fast-evolving conditions in the theater industry. Defendants' representations reasonably carried with them that context and the uncertainty that always accompanies predictions about the future and representations about fast-changing conditions. They are not reasonably interpreted in isolation. The State's arguments as to falsity of individual representations depend on its own inferences, and those inferences are unreasonable as a matter of law.

For example, a line on the Kickstarter webpage was "go digital or go dark." The State argues that this expression necessarily implies that the theater absolutely would close immediately if the Kickstarter campaign were unsuccessful, or at least if digital projection equipment were not installed. This is false, argues the State, because Mr. Corse, the owner, was the only person who could decide that the Randall would stop showing films and he never made that decision. The State's interpretation of this expression, and related representations, is unreasonable as a matter of law. The expression, understood in context, reasonably meant that the theater needed to go digital if it had any hope of operating sustainably into the future given the emergent lack of first-run movies on 35 mm film. According to evidence in the record, that representation was not false. It was accurate.

3

Similarly, there were representations that Mr. Gerhard had gotten "all" the estimates and going digital would cost $75,000, though he was seeking a much smaller amount on Kickstarter. The State argues that these representations were false because after the Kickstarter campaign ended Mr. Gerhard was able to find and buy a used system that was substantially less expensive than $75,000. He had not, the State argues, gotten "all" the estimates and the system did not cost $75,000. The State argues that this statement is a consumer protection violation.

In the context of the fundraising campaign, the reasonable interpretation of these representations was that Mr. Gerhard had done his due diligence on the cost of buying and installing a digital projection system, and the reasonable estimate for such a system was $75,000. Mr. Gerhard had done his homework. According to the uncontradicted testimony of his expert, $75,000 was precisely the reasonable estimate for what such a system would cost. Neither of these representations could be reasonably understood as misleading.

They also did not become misleading merely because, after the Kickstarter campaign ended, Mr. Gerhard discovered a dealer willing to sell appropriate used equipment at less than $75,000. The representation about what the system would cost, as a forward-looking estimate, was reasonable. There is no evidence that Mr. Gerhard had any reasonable basis during the campaign for thinking that the actual system would cost anything less than $75,000. If a town needs a construction truck and puts the cost of a new one in the budget to be approved at town meeting, and later is able to purchase a fully functioning used truck for less, that does not make the statement as to the expected full cost misleading. There is no dispute that the actual expense, though less than $75,000, was far in excess of the funds Mr. Gerhard raised from the public. There was no windfall. There was no deception. A reasonable estimate of the expense of installing a system was not a promise to spend no less than that.

Nonetheless, it is possible that the totality of what Mr. Gerhard said *and did not say* publicly in the context of the campaign as a whole could reasonably have left the misleading impression that donations would support an enduring capital improvement to the Randall rather than the purchase of an asset to be owned personally by Mr. Gerhard (or his LLC) and which he might (and did) unilaterally remove a couple months after installing it. A jury will need to resolve whether these circumstances amount to a violation of the CPA.

The facts relating to Mr. Gerhard's negotiations to buy or operate other drive-in theaters before or after the Kickstarter campaign are largely irrelevant. The record is clear that, at all times material to this case, Mr. Gerhard wanted to operate the Randall during the 2015 and subsequent seasons if he could arrange it with Mr. Corse. While his negotiations with Mr. Corse were unsuccessful, there is no evidence that, throughout the fundraising campaign, he was surreptitiously planning to vacate the Randall in favor of some other theater. Any such implications in the State's arguments are highly speculative and unsupported by the record. Just because a person has a Plan B in the wings in case an uncertain Plan A does not work out, that is not a basis to conclude as a matter of law that the person did not intend to complete Plan A.

The State also argues that there somehow is an independent "unfair act" insofar as Mr. Gerhard had the ability to mitigate any harm caused by the misrepresentation described above

and did not. The State argues that he could have chosen to not accept the Kickstarter funds or refund them after accepting them. The course of events that includes the disposition of the Kickstarter funds is fairly within the scope of the misrepresentation claim itself, however. If the disposition of those funds was consistent with donors' reasonable impressions of what was going to occur, there could be no misrepresentation in the first place. If the jury determines that they were inconsistent with the donor's reasonable impressions, then the jury may find that the claim is proved. In any event, the "unfair act" claim based on failure to reject or return Kickstarter funds is not an independent basis for liability for a separate violation but a part of the main claim in Count 1.

In summary, the State's motion for summary judgment is denied as to Count 1. To the extent that there is a claim that a series of statements and representations and omissions in the aggregate may amount to a violation of the CPA, the inferences to be drawn from the facts are disputed. It will be the task of the jury as factfinder to determine whether the State's evidence meets the burden of proof. Summary judgment is granted to Defendants on any claim that each separate individual statement, by itself, constitutes a separate CPA violation.

Count 2: Reasonable cost of digital equipment.

This count relates to statements related to the anticipated expense of purchasing and installing the digital projection system. For the reason as described above, the State's inferences from or interpretations of specific representations related to the cost are not reasonable as a matter of law. Defendants are entitled to summary judgment as to count 2 as a separate violation. The evidence may be presented, however, as part of the aggregate pattern of statements and omissions in support of the triable claim in count 1.

Count 3: Contract with Kickstarter

In count 3, the State alleges that the CPA violations alleged in counts 1 and 2 are breaches of Mr. Gerhard's agreement with Kickstarter and thus additional CPA violations. Any breach of his agreement with Kickstarter is between him and Kickstarter. It is not an independent violation of the CPA.

*CPA claims against Ms. Franz*

The State alleges that Ms. Franz also made some representations that were false and violated the CPA due to their falsity. Her specific individual statements and representations that the State alleges were deceptive were not of a different character than those described above that the court has concluded were not deceptive as a matter of law as individual statements.

The State relies on posts she made on her Facebook page, in which she encouraged support for the project and referred to 'my' drive-in theater and 'our' Kickstarter campaign. These comments are not distinguishable from what another community supporter of the drive-in might say on social media and are not sufficient to support even a colorable claim of apparent authority. The State also relies on a newspaper story that quoted her as having said, "We both just really love drive-ins, and we're hoping to keep this one alive. We had a really great season

5

last year, and we really want to keep going." This is a hearsay statement by a news reporter and not admissible, and is not sufficient, in and of itself, to attribute to her the role of speaking for CTD. Her use of "we" in context does not show an intent to speak for CTD. She was a cheerleader for the cause, but she had no responsibility for the course of events that constitute the basis for the count 1 claim triable by a jury as described above.

Ms. Franz, as only a companion to Mr. Gerhard and not a person with any authority to speak on behalf of CTD, cannot be responsible for any more general impression that donors may have had regarding the digital projection system as an enduring capital improvement for the Randall. The record is undisputed that all business decisions were made by Mr. Gerhard personally and in his capacity managing CTD. Ms. Franz was his companion, fellow drive-in theater enthusiast, and a supporter of the Randall. The record does not include reliable evidence that she said or did anything that any member of the public who also was an enthusiastic supporter of the Randall might reasonably also have said or done.

ORDER

For the foregoing reasons,

1. The State's motion for summary judgment (MPR # 6) is *denied*, and CTD and Mr. Gerhard are entitled to summary judgment on counts 2 and 3;
2. Ms. Franz's motion for summary judgment (MPR # 10) is *granted*; and
3. The date for completion of mediation on count 1 is extended to March 15, 2018.

Dated at Montpelier, Vermont this _____ day of January 2018.

_____
Mary Miles Teachout
Superior Judge

6